## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Cornelius Jones,**

*Plaintiff,*

v.

**Nelson Cruz & Associates, LLC, Fredrick Riley, Globex Holdings, LLC,** *and* **John Weston Kimball,**

*Defendants.*

Case Number: _____

Ad Damnum:  **$9,054 + Punitive Damages + Atty Fees & Costs**

**JURY TRIAL DEMANDED**

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Cornelius Jones** ("**Mr. Jones**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Nelson Cruz & Associates, LLC** ("**Nelson**"), **Fredrick "Freddie" Riley** ("**Riley**"), **Globex Holdings, LLC ("Globex"),** and **John Weston Kimball** ("**Kimball**") (collectively, the "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Jones against Nelson and Riley for violations of the ***Fair Debt Collection Practices Act***, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against all Defendants for violations of the ***Florida Consumer Collection Practices Act***, Section 559.55, Florida Statutes, *et seq.* ("**FCCPA**"), and

Florida's *Civil Remedies for Criminal Practices Act* ("**CRCPA**"), Section 772.101 Florida Statutes, *et seq.*

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d), the FCCPA, Section 559.77, Florida Statutes, the CRCPA, Section 772.104, Florida Statutes, and 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction for Mr. Jones' state law claims pursuant to 28 U.S.C. § 1367.

4.      Nelson and Riley are subject to the provisions of the FDCPA, and all Defendants are subject to the FCCPA, the CRCPA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Jones

6.      **Mr. Jones** is a natural person residing in Zephyrhills, Pasco County, Florida, and a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. §1692a(3) and Section 559.55(8), Florida Statutes, respectively.

<u>**Nelson Cruz & Associates, LLC**</u>

7.     **Nelson** is a Texas limited liability company with a primary business address of **9535 Forest Lane, Suite 114, Dallas, TX 75243**.

8.     Nelson is not currently registered to conduct business in the State of Florida, and its Texas Registered Agent is **Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, TX 78731.**

9.     Nelson is a *Debt Collector* within the meaning of the FDCPA and the FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that it uses e-mail, an instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.     Nelson is not registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency*.

<u>**Fredrick "Freddie" Riley**</u>

11.     **Riley** is a natural person, and on information and belief, resides at **7820 Roaring Ridge Dr., Plano, TX 75025.**

12.     Riley is the managing member of Nelson and is responsible for the implementation of its policies and procedures.

**Globex Holdings, LLC**

13.     **Globex** is a Missouri limited liability company with a primary business address of **5705 NW 64th Terrace, Kansas City, MO 64151.**

14.     The Missouri registered agent for Globex is **John Kimball, 5705 NW 64th Terrace, Kansas City, MO 64151.**

15.     Globex beneficially owns and controls several online payday lending websites, including *ReadySetGoFinance.com* and *GeyserLending.com*.

16.     Globex does business in the Middle District of Florida over the internet, contacting and interacting with Florida consumers via text message, e-mail, Automated Clearing House transactions, telephone, and postal mail.

**John Weston Kimball**

17.     **Kimball** is a natural person, and is the CEO, owner, and only managing member of Globex.

18.     On information and belief, Kimball resides at **6109 N. Mattox Road, Kansas City, MO 64151.**

**FACTUAL ALLEGATIONS**

**Globex, as ReadySetGo Finance, Makes Illegal Loan to Mr. Jones**

19.     On or about February 2, 2017, ReadySetGo Finance made a loan to Mr. Jones in the amount of $500 (the "**Debt**").

20.     The interest rate on the loan exceeded 700% annually.

21.     A $500 loan repaid in 15 bi-weekly installments of $134.54 results in total repayment by the consumer of a staggering $2,018. **SEE PLAINTIFF'S EXHIBIT A.**

22.     The Debt arose from a transaction which was primarily for family, personal, and household purposes, specifically a payday loan for personal purposes and expenses, and meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

23.     ReadySetGo Finance wired the loan proceeds to Mr. Jones' checking account which he maintained in Pasco County, Florida.

24.     The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

25.     Section 687.071(3), Florida Statutes, renders loans made with annual interest rates **greater than 45%** a felony.

26.     Further, Section 687.071(7), Florida Statutes, indicates that any such loan, and logically any debt stemming from such loan, is void and unenforceable.

27.     Any person who willfully makes a loan in violation of Section 687.071(3), Florida Statutes, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935). *See also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519

(1941); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966); *Rollins v. Odom*, 519 So. 2d 652, 655 (Fla. Dist. Ct. App. 1988)

28.     Florida law further prohibits any recovery of the principal for such usurious loans. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

29.     The fact that Mr. Jones obtained the loan while in his home in Florida, had the proceeds wired to his bank account in Florida, and received collection correspondence in his home in Florida, establishes that the transaction occurred in Florida and is therefore subject to Florida law. *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).

30.     The terms of the ReadySetGo Finance loan made to Mr. Jones called for interest to be assessed at a rate exceeding 700% annually – far higher than the maximum lawful interest rate in Florida. As such, the loan was void *ab initio* and unenforceable against Mr. Jones.

31.     The making, and collection, of the loan constitutes a felony pursuant to Section 687.071(3), Florida Statutes.

32.     Thus, the loan is an unlawful debt as defined under the CRCPA, Section 772.102(2)(a)(3), and ReadySetGo Finance engaged in criminal actions against Mr. Jones.

**Globex and Kimball's Payday Lending History and "Rent-A-Tribe" Scheme**

33.     Kimball is a veteran of the online payday lending industry, and he controls and owns, through Globex, several online payday lenders, including Geyser Lending and ReadySetGo Finance.

34.     ReadySetGo Finance operates from readysetgofinance.com and makes loans to consumers at interest rates exceeding 700%.

35.     According to its website, "ReadySetGo Finance is a sovereign enterprise wholly-owned by Kashia Services, an economic development arm and instrumentality of, and wholly-owned and controlled by the Kashia Band of Pomo Indians of the Stewarts Point Rancheria, a federally-recognized American Indian tribe."

36.     However, such statements are fiction; the Kashia Band of Pomo Indians of the Stewarts Point Rancheria (the "**Kashia Tribe**") has little involvement in the operation of ReadySetGo Finance, as the enterprise was, at all times relevant to this lawsuit, actually beneficially owned and operated by Globex through Kimball and other investors.

37.     Prior to sometime around 2010, many online lenders attempted to circumvent civil and criminal statutes of states like Florida via the utilization of "choice of law" provisions, requiring borrowers to agree to the laws of Utah or Delaware to govern their loan contracts because these states have no *per se* cap on interest rates.

38. Although New Mexico had no cap on interest rates, their state Supreme Court found that a lender's 1100% interest rate was illegal as it constituted unconscionable business practices; *see State of New Mexico vs. B&B Investment Group., d/b/a Cash Loans Now*, New Mexico Supreme Court, June 26, 2014, Docket No. 34,266.

39. Thereafter, many lenders pivoted, entering into arrangements with financially desperate American Indian tribes; the tribes would become the straw owners of a lending enterprise and claim that the loans were made on their reservation, under their tribal laws, providing a colorable sovereign immunity defense from state criminal prosecution for loan sharking.

40. Such arrangements are referred to as "rent-a-tribe" schemes because the main function of the Indian tribe is to appear, on paper at least, to control the lending operation so that the lender qualifies for sovereign immunity, theoretically restricting the enforcement of criminal and/or civil actions by state regulatory authorities.

41. Sovereign immunity does not, however, turn an otherwise illegal loan into a legal one; at best, it potentially creates a defense to criminal or civil prosecution of the crime. *See, e.g., United States v. Neff*, No. 18-2282 (3d Cir. Sep. 6, 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform

illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

42.     While there have been some high-profile criminal prosecutions of non-tribal lenders engaging in "rent-a-tribe" schemes (perhaps most notoriously, Scott Tucker, who was sentenced in 2018 to 16 years for engaging in one of the largest documented "rent-a-tribe" schemes ever), those making mere millions instead of hundreds of millions often go unperturbed by law enforcement.

43.     Much like complex tax shelters, the deployment of these schemes is a calculated gamble: the risk of being caught is low, and the profit potential is high.

44.     Thus, these schemes continue to perpetuate, with the non-tribal puppet masters giving the tribal entity little actual authority and controlling the way the loans are marketed, underwritten, collected, and serviced.

45.     In the case of ReadySetGo Finance, Kimball, through Globex, pays the Kashia Tribe a nominal amount – around two percent of revenues – to claim ownership of the online payday lending entity, making it *appear* as though ReadySetGo Finance is owned by an Indian tribe and operating on an Indian reservation.

**Kashia Tribe Engages in Myriad Rent-A-Tribe Schemes**

46.     The Kashia Tribe is a small, isolated tribe with a 550-acre reservation and approximately 78 members. The Kashia Tribe has no real economic prospects and has struggled economically for decades.

47.     Thus, the Kashia Tribe has been willing to profit off one of its few assets, its sovereign immunity, by allowing a large number of non-tribal investors to use its name and create more than a dozen "rent-a-tribe" agreements.

48.     Any involvement the Kashia Tribe had in making or collecting the ReadySetGo Finance loan made to Mr. Jones was nominal and periphery.

49.     Globex, not the Kashia Tribe, was the true lender of Mr. Jones' loan, because it has the predominant economic interest in loans made to consumers like Mr. Jones. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

50.     Despite the Kashia Tribe operating nearly a dozen different payday lending websites, only two of them share a common IP address—Geyser Lending and ReadySetGo Finance, which are, not coincidentally, the only two of which are controlled by Globex and Kimball.

51.     Geyser Lending operates from an IP address of 64.207.179.176, which corresponds to a physical location in Culver City, California. ReadySetGo Finance operates from the identical IP address. **SEE PLAINTIFF'S EXHIBIT B**.

52.     No other websites operate from this IP address. *Id.*

53.     Indeed, when ReadySetGo Finance obtains credit reports on consumers from Trans Union, the phone number associated with the inquiry appearing on the particular consumer's credit disclosure is 816-591-4056. **SEE PLAINTIFF'S EXHIBIT C.**

54.     The 816 area code is assigned to the Kansas City area. The number 816-591-4056 is Kimball's personal cell phone number.

55.     In or around February 9, 2017, Globex and Kimball, as ReadySetGo Finance, reported to FactorTrust, a nationwide *Consumer Credit Reporting Agency* ("**CRA**") that Mr. Jones' loan, bearing Loan ID number 69804120, had been paid in full with a $0 balance remaining. **SEE PLAINTIFF'S EXHIBIT A**.

56.     Thus, according to ReadySetGo Finance's own reports, it collected $2,018 from Mr. Jones. *Id.*

57.     Despite this, Globex and Kimball later alleged that an additional $751 remained unpaid and owed to them.

## Nelson and Riley's Collection Efforts

58.     On or around April 1, 2021, ReadySetGo Finance, under the direction of Kimball and Globex, placed, transferred, sold, or otherwise assigned the Debt to Nelson.

59.     In the alternate, some unknown successor-in-interest to the purported Debt placed, transferred, sold, or otherwise assigned the Debt to Nelson.

60.     As part of its efforts to collect the purported Debt, Nelson reported the debt to various nationwide CRAs, including Trans Union. **SEE PLAINTIFF'S EXHIBIT D.**

61.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

62.     A debt collector's "ability to report on the credit habits of its customers is a powerful tool designed, in part, to wrench compliance with payment terms … (the) alleged refusal to correct mistaken information can only be seen as an attempt to tighten the screws on a nonpaying customer." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

63.     Nelson and Riley knew, or should have known, that the Debt was not legally enforceable against Mr. Jones due to the illegal interest rate assessed to the

Debt. Further, pursuant to the original creditor's own reporting, no balance of any kind was owed.

64.     At no point did Nelson ever disclose to Mr. Jones that the Debt was not enforceable in Florida, or that he had no legal obligation to pay the Debt under Florida law.

65.     The failure to disclose the fact that a debt is not legally enforceable can materially mislead a consumer and place them at a disadvantage in charting a course of action to take in response to the allegation of debt; *see Baez v. LTD Fin. Servs.*, L.P., No. 17-13842 (11th Cir. Dec. 7, 2018); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 425, 428-30 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684, 687 (7th Cir. 2017); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 395, 399-400 (6th Cir. 2015); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).

66.     When Nelson made its reports to the Trans Union, it attested to the completeness and accuracy of the information it reported, as required by the CRAs, including attesting to the fact that the debt was *legitimately* owed.

67.     Indeed, upon being notified by his credit monitoring program that Nelson's tradeline had reported to his credit history alleging that $751 was owed to "READY SET GO," Mr. Jones believed the Debt was legally enforceable against him.

68.     As aforementioned, the original creditor acknowledged that Mr. Jones had paid the unenforceable Debt in full, as it reported to FactorTrust.

69.     Nelson's false reporting of a debt, which was already paid in full, as "unpaid" and "in collection" has caused a detrimental impact to Mr. Jones' credit scores and ability to obtain new credit, including a first-time homebuyer's loan.

70.     Additionally, even assuming, *arguendo*, some amount was unpaid to ReadySetGo Finance, no debt exists pursuant to Florida law since the entire loan was *void ab inito* due to the illegal interest rate exceeding 700% per annum.

71.     Riley actively manages Nelson and directs the policies of the company.

72.     Riley had influence over the officers, directors, owners, and/or employees of Nelson, and directly or indirectly instructed the employees of Nelson to attempt to collect a non-existent debt from Mr. Jones.

73.     Further, Riley was involved in the decision for Nelson to collect "tribal" payday loan debt. Riley, a veteran of the debt collection industry, was aware that these debts were illegal and unenforceable in almost all states, including Florida.

74.     During all times pertinent hereto, Riley: (a) created the collection policies and procedures used by Nelson and its respective employees and agents; (b) managed or otherwise controlled the daily collection operations of Nelson; (c) oversaw the application of the collection policies and procedures used by Nelson

and its respective employees and agents; (d) drafted, created, approved, and ratified the unlawful debt collection practices and procedures used by Nelson and its respective employees and agents in connection with its common efforts to collect debts; and, (e) had knowledge of, approved, participated in, ratified, and benefited financially from the unlawful debt collection practices used by Nelson and its respective employees and agents, in attempts to collect an alleged debt from Mr. Jones as alleged in this complaint.

75.     Mr. Jones has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

**COUNT I**
**VIOLATIONS OF THE FDCPA -** *Nelson and Riley*

76.     Mr. Jones incorporates paragraphs 1 – 75 as if fully restated herein.

77.     Nelson and Riley violated **15 U.S.C. § 1692e(2)(a)** when they made false representations regarding the character or legal status of a debt by falsely representing to Mr. Jones, to the CRAs, and to readers of Mr. Jones' credit reports that the Debt, which was already paid-in-full, was somehow still "in collection" in the amount of $751, and that the Debt was legally enforceable against Mr. Jones — despite it being null, void, and unenforceable as usurious under Florida law.

78.     Nelson and Riley violated **15 U.S.C. § 1692e(8)** when they communicated credit information known to be false by reporting to the CRAs that Mr. Jones owed a legally enforceable debt, when he not only owed no such debt,

as it was reported paid-in-full, but he could not owe such debt, as the Debt was void and unenforceable pursuant to Florida law, and Nelson and Riley knew or should have known this.

79. Nelson and Riley violated **15 U.S.C. § 1692e and 1692e(10)** in that they used false, deceptive, and misleading representations in connection with the collection of a debt by:

    a.    falsely representing that the Debt was legally enforceable when it was usurious and unenforceable under Florida law;

    b.    failing to disclose that no legal action could be taken against Mr. Jones for nonpayment, and that Mr. Jones had no legal obligation to repay the Debt under Florida law; and,

    c.    falsely representing that the Debt was owed, when the Debt was paid in full.

80. Nelson and Riley violated **15 U.S.C. § 1692f(1)** when they attempted to collect an amount which included an illegally applied interest rate exceeding 700% per annum, when such fees are felonious under Section 687.071(3), Florida Statutes.

81. Nelson and Riley's actions were willful and intentional and representative of their normal business practices.

**WHEREFORE**, Mr. Jones respectfully requests this Honorable Court to enter judgment against Nelson and Riley, jointly and severally, for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C.

§1692k(a)(2)(A);

b.   Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C.

§1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA - *Nelson and Riley*

82.   Mr. Jones incorporates paragraphs 1 – 75 as if fully restated herein.

83.   Nelson and Riley violated **Section 559.72(9), Florida Statutes**, when they attempted to enforce a debt against Mr. Jones which they knew or should have known was illegitimate and unenforceable due to the application of an annual interest rate in excess of 700 percent.

84.   Nelson and Riley violated **Section 559.72(9), Florida Statutes**, when they attempted to enforce a debt against Mr. Jones that was already paid in full.

85.   Nelson and Riley violated **Section 559.72(9), Florida Statutes**, when they asserted legal rights which do not exist – the right to collect a debt from Mr. Jones which was unenforceable due to the application of an annual interest rate in excess of 700 percent.

86.   Nelson and Riley's actions were willful, intentional, and done for the express purpose of collecting an unenforceable and paid debt from Mr. Jones.

87.    By their conduct, Nelson and Riley are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Jones respectfully requests this Honorable Court enter judgment against Nelson and Riley, jointly and severally, for:

a.    Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.    Punitive damages for their intentional, illegal debt collection efforts, pursuant to Section 559.77(2), Florida Statutes;

d.    Injunctive relief preventing Nelson and Riley from attempting to collect the alleged debt from Mr. Jones pursuant to Section 559.77(2), Florida Statutes;

e.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

f.    Such other relief that this Court deems just and proper.

## COUNT III
## <u>VIOLATIONS OF THE FCCPA – *Kimball and Globex*</u>

88.    Mr. Jones incorporates paragraphs 1 – 75 as if fully restated herein.

89.    Kimball and Globex violated **Section 559.72(9), Florida Statutes**, when they attempted to enforce a debt against Mr. Jones which they knew was illegitimate and unenforceable due to the application of an annual interest rate in

excess of 700 percent, when ReadySetGo Finance placed the Debt for collection with Nelson and instructed Nelson to collect the illegal Debt from Mr. Jones.

90.   Kimball and Globex violated **Section 559.72(9), Florida Statutes**, when they attempted to enforce a debt against Mr. Jones that was already paid in full.

91.   Kimball and Globex violated **Section 559.72(9), Florida Statutes**, when they asserted legal rights which do not exist – the right to collect a debt from Mr. Jones which was unenforceable due to the application of an annual interest rate in excess of 700 percent.

92.   Kimball and Globex's actions were willful, intentional, and done for the express purpose of collecting an unenforceable and paid debt from Mr. Jones.

93.   By their conduct, Kimball and Globex are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Jones respectfully requests this Honorable Court enter judgment against Kimball and Globex, jointly and severally, for:

a.   Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.   Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.   Punitive damages for their intentional, illegal debt collection efforts, pursuant to Section 559.77(2), Florida Statutes;

d.    Injunctive relief preventing Kimball and Globex from attempting to collect the alleged debt from Mr. Jones pursuant to Section 559.77(2), Florida Statutes;

e.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

f.    Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE CRCPA – *Kimball and Globex*

94.    Mr. Jones incorporates paragraphs 1 – 75 as if fully restated herein.

95.    Kimball and Globex violated **Section 772.103(1), Florida Statutes**, when, with criminal intent, they made loans and collected debts which they knew were unlawful at the time they were issued and purposely sought to conceal their unlawful debt collection activities behind an American Indian tribe under the cloak of sovereign immunity.

96.    Kimball and Globex knowingly engaged in a pattern of activity wherein they made loans well in excess of 45% interest per annum, in clear violation of Section 687.071(3), Florida Statutes, and then proceeded to collect these unlawful debts and obtain proceeds therefrom, through ACH debits, phone calls and emails to Mr. Jones at his home in Pasco County, Florida. Kimball and Globex used the proceeds of this unlawful debt collection in the operation of their ongoing business enterprises.

97.     Kimball violated **Section 772.103(1), Florida Statutes,** when he, with criminal intent, engaged in a pattern of criminal activity through the collection of unlawful debt, and then used the proceeds to further establish other enterprises, including, but not limited to, Globex, ReadySetGo Finance, and Geyser Lending.

98.     Kimball violated **Sections 772.103(1) and (3), Florida Statutes,** when, with criminal intent, he participated, through his association with Globex, ReadySetGo Finance, and the Kashia Tribe, in the collection of an unlawful debt, specifically a loan made at more than 700% interest to Mr. Jones, and received a portion of the proceeds therefrom.

99.     Kimball and Globex violated **Section 772.103(2), Florida Statutes**, when Kimball, as the owner and manager of Globex, and the true owner of ReadySetGo Finance, engaged in a pattern of criminal activity by attempting to collect an unlawful debt from Mr. Jones, as well as thousands of other Florida consumers – a Debt which included interest in excess of 700% per annum, in violation of Section 687.071(3), Florida Statutes. Kimball maintained, and continues to maintain, an interest and control in ReadySetGo Finance and Globex, enterprises which are devoted solely to the facilitation of the making and collection of unlawful, usurious debts, such as the one made to Mr. Jones.

100.    Kimball violated **Section 772.103(3), Florida Statutes**, when, with criminal intent, he was both employed by and associated with Globex and ReadySetGo Finance, as their owner, manager, and beneficiary. Globex and

ReadySetGo Finance engaged in a pattern of criminal activity by attempting to collect an unlawful debt from Mr. Jones, as well as thousands of other Florida consumers. Kimball owns and controls Globex, and thus ReadySetGo Finance, enterprises which are devoted solely to the making of usurious loans and the collection of interest thereof.

101.    Kimball and Globex violated **Section 772.103(4), Florida Statutes**, when they conspired and endeavored to collect an illegal, usurious debt whose stated interest rate exceeded 700% annually. Kimball, as the owner and manager of Globex, and the true owner of ReadySetGo, knowingly conspired to engage in criminal activity, through a pattern where it made illegal loans to Mr. Jones, as well as thousands of other Florida consumers – and then proceeded to collect these unlawful debts and obtain proceeds therefrom, through ACH debits, phone calls and emails to Mr. Jones at his home in Pasco County, Florida. By collecting usurious interest payments from Mr. Jones, Globex and Kimball not only conspired, but endeavored to violate Section 772.103(1), Florida Statutes.

102.    Kimball and Globex engaged in the collection of unlawful debts and obtained proceeds therefrom, with criminal intent, as they were well aware that the loans at issue are usurious in many states, including Florida.

103.    ReadySetGo Finance's business model readily acknowledges the illegal nature of its loans and goes to great lengths to obfuscate how, and by whom,

the loans were made, in an attempt to deceive consumers into believing that they have no legal recourse against the enforcement of such debts.

104.    The actions of Kimball and Globex were knowingly unlawful, willful, intentional, and done with the express intention of deceiving Mr. Jones and taking money from him which they had no legal right to take.

105.    Mr. Jones has suffered actual damages as the result of the actions of Kimball and Globex, including, without limitation, at least $2,018 in payments on an unlawful and usurious loan made by ReadySetGo Finance, the proceeds of which overwhelmingly benefited Kimball and Globex.

106.    By their conduct, Globex and Kimball are liable for the above-stated violations of the CRCPA.

**WHEREFORE,** Mr. Jones respectfully requests this Honorable Court enter judgment against Kimball and Globex, jointly and severally, for:

a.    Treble actual damages of **$2,018** (for a total of **$6,054**), or in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Section 772.104(1), Florida Statutes;

b.    Reasonable costs and attorneys' fees pursuant to Section 772.104(1), Florida Statutes; and,

c.    Such other relief that this Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Mr. Jones demands a jury trial on all issues so triable.

Respectfully submitted on **July 15**, **2021** by:

**SERAPH LEGAL, P.A.**

<u>/s/ *Brandon D. Morgan*</u>
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
bmorgan@seraphlegal.com

<u>/s/ *Thomas M. Bonan*</u>
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
tbonan@seraphlegal.com

1614 N 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**<u>ATTACHED EXHIBIT LIST</u>**

| | |
|---|---|
| A | Mr. Jones' FactorTrust Consumer Disclosure, June 14, 2021, Excerpt |
| B | Server Location and IP Address for Geyser Lending and ReadySetGo Finance |
| C | Unrelated Consumer's FactorTrust Consumer Disclosure, ReadySetGo Finance Tradline |
| D | Trans Union's Reporting of the Nelson Tradeline, via Credit Karma, June 14, 2021 - Excerpt |